# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHADALE L. WILLIAMS,<br><br>            Plaintiff,<br><br>    v.<br><br>N. GRANNIS, et al.,<br><br>            Defendants.<br>_____/ | CASE NO. 1:07-CV-01008-AWI-DLB PC<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>(DOC. 72)<br><br>OBJECTIONS DUE WITHIN 21 DAYS |

**Findings And Recommendation**

**I.    Background**

Plaintiff Shadale L. Williams ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). Plaintiff is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding against Defendants Lopez, Brubaker, and Spaeth for violation of the Eighth Amendment and against Defendants Grannis and Bautista for supervisory liability.

Pending before the Court is Defendants' motion for summary judgment, filed May 7, 2010. Doc. 72, Defs.' Mot. Summ. J. Plaintiff did not file a timely opposition to Defendants' motion.[1] The matter is submitted pursuant to Local Rule 230(l).

---

[1] Plaintiff was informed of the requirements for opposing a motion for summary judgment by a Court order on May 5, 2008. Doc. 18, Second Informational Order; *see Klingele v. Eikenberry*, 849 F.2d 409, 411 (9th Cir. 1988).
    On September 15, 2010, Plaintiff requested an extension of time to file his opposition. Doc. 84. The Court granted this request. Doc. 85. However, as of the date of this Findings and Recommendation, Plaintiff still failed to file a timely opposition. The Court finds that Plaintiff has waived any opposition to Defendants' motion. *See* L.R.

1

## II. Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).[2]  Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a Summary Judgment Motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.*  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11.  The opposing party must

---

230(l).

[2]  The Federal Rules of Civil Procedure were updated effective December 1, 2010.

demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2002); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting former Rule 56(e) advisory committee's note on 1963 amendments).

In resolving a motion for summary judgment, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which an inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E. D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586-87 (citations omitted).

//

### III. Undisputed Facts[3]

Plaintiff is a prisoner in the custody of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff was housed at Kern Valley State Prison (KVSP) at all times material to the matters at issue. At all times relevant in this action, Defendant Lopez and Brubaker were employed by CDCR at KVSP as a Correctional Officer. At all times relevant in this action, Defendant Spaeth employed by CDCR at KVSP as a physician and surgeon. At all times relevant in this action, Defendant Bautista was employed by CDCR at headquarters in Sacramento, California as a Correctional Counselor II, Specialist. At all times relevant in this action, Defendant Grannis was employed by CDCR at the Inmate Appeals Branch in Sacramento, California as the Chief of Inmate Appeals.

On January 13, 2007, Officer Castro heard loud noises coming from C-Section, and went to that unit to investigate. Officer Castro saw Plaintiff standing at his cell door shouting out "profanities and biblical references from behind his cell door." Officer Castro noted that Plaintiff had been counseled to stop the behavior, but he refused to stop shouting. Officer Castro told Plaintiff that if he continued his behavior, Castro would author a disciplinary chrono.

On January 18, 2007, at approximately 9:10 p.m., Defendant Brubaker was in the office when he heard yelling coming from C-Section. He went to the unit and saw inmate Plaintiff standing at his cell door, yelling bible scriptures. Defendant Brubaker went to the cell and told Plaintiff to stop. Defendant Brubaker also informed Plaintiff that his yelling was disrupting the other inmates. Defendant Brubaker then told Plaintiff to "keep it down" or that he would receive a disciplinary violation. Plaintiff kept yelling. Defendant Brubaker then issued a disciplinary violation, charging Plaintiff with disruptive behavior.

On February 1, 2007, Plaintiff appeared before Sergeant Hill for adjudication of the rules violation. Plaintiff stated that he was in good health, and acknowledged that he had received prior notice of the hearing and copies of the disciplinary report. Plaintiff pled guilty to the charge of disruptive behavior and stated, "I was preaching the word of God. I will continue

---

[3] All facts are taken from Defendants' statement of undisputed facts and are considered undisputed, unless otherwise noted.

4

to preach because they all need to hear it.  I yell so everyone has to hear me.  I can't say anymore because of the separation of church and state." Plaintiff was found guilty of disruptive behavior and assessed thirty days loss of dayroom and telephone privileges, to begin that day.  During the hearing, Plaintiff informed Sergeant Hill that he was on his first day of a hunger strike.  Plaintiff told Sergeant Hill that he was on hunger strike because he needed to preach the word of God.  Plaintiff also stated that he was willing to die for his Lord.  Sergeant Hill called housing unit staff, who verified that Plaintiff had refused the evening meal.  Although Plaintiff was not a participant in the mental health system at that time, Sergeant Hill believed that Plaintiff's behavior warranted an evaluation by mental health professionals.  Sergeant Hill noted Plaintiff's habit of yelling bible scriptures from his cell at all hours of the day and night, and that Plaintiff appeared hostile and argumentative when conversing with staff.

   Medical staff was notified of Plaintiff' hunger strike, and Plaintiff was seen by nurse Lee the following day. During the examination on February 2, 2007, Plaintiff weighed in at 150 pounds. His pulse and blood pressure were normal, and he was able to verbalize all of his needs.  Plaintiff told the nurse that he had been on a hunger strike since the evening of January 31, 2007, but that he was drinking water, at least twelve ounces every hour.  Nurse Lee noted that medical staff would continue to monitor Plaintiff throughout the hunger strike, and she notified Dr. Vasquez of the situation.  Plaintiff was seen by medical staff again on February 4, 2007.  The nurse noted that Plaintiff had been on a hunger strike since January 31, 2007, but that his skin color and temperature were normal, and his breathing was unlabored.  Plaintiff was able to walk well with a steady gait.  Plaintiff was again referred to a doctor.

   Plaintiff was seen by Defendant Spaeth on February 9, 2007, the last day of his hunger strike. Plaintiff told Defendant Spaeth that he had been on a hunger strike for ten days, and that he had not gone off the hunger strike on February 5, 2007, as previously believed by another doctor.  Plaintiff told Defendant Spaeth that he should be in administrative segregation, then handed her a piece of paper.  Defendant Spaeth noted that Plaintiff' weight was 142 pounds; that he had lost eight pounds in a week.  Plaintiff was alert with pressured speech.  Although Plaintiff told the doctor that he had been drinking water, Defendant Spaeth ordered an immediate

Basic Metabolic Panel (BMP) consisting of eight specific tests that checks the patient's glucose and calcium, electrolytes, and kidney functions. Defendant Spaeth also ordered a mental health consultation for Plaintiff.

Plaintiff wrote to the Director of CDCR on February 5, 2007, claiming that he had heard from other inmates that Defendants Lopez and Brubaker had incited prisoners to "hurt" Plaintiff. Defendant Bautista responded to the letter on March 13, 2007. Defendant Bautista informed Plaintiff that the appropriate avenue for resolving staff complaints was to file a grievance. He also advised Plaintiff to verify the claims before going on a hunger strike. Plaintiff filed a grievance on April 2, 2007, claiming that unnamed prison officials threatened and punished him for exercising his First Amendment rights. The grievance was rejected as untimely. Plaintiff filed no other grievances while housed at KVSP. Plaintiff later submitted a grievance to the Chief of the Inmate Appeals Branch. L. Hoagland answered on behalf of the Director, Defendant N. Grannis, and returned the appeal to Plaintiff because it was administrative in nature, and involved the appeals process. Plaintiff was also informed that he could obtain addresses from library staff.

**IV.     Analysis**

    **A.     Defendants Lopez and Brubaker**

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain . . . ." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. *Id.*; *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982). Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." *Farmer v.*

6

1  *Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  Second,
2  the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . .
3  . ."  *Id.* at 837.

4        Defendants contend that summary judgment should be granted in favor of Defendants
5  Lopez and Brubaker.  Defs.' Mot. Summ. J. 7:3-15.  Defendants contend that Plaintiff's only
6  allegation against Defendants concerns attempts to incite threats or violence against him.  *Id.*
7  Defendants contend that there was no imminent danger to Plaintiff as the institution, and thus
8  other inmates, were on lockdown.  *Id.* (citing Pl.'s Compl. 10).

9        Construing the facts in the light most favorable to the nonmoving party, the Court finds
10 that the danger to Plaintiff was not sufficiently imminent as to constitute a substantial risk of
11 harm to Plaintiff.   The harm alleged must be sufficiently serious, and the risk of harm must be
12 excessive.  *Farmer*, 511 U.S. at 834.  Here, Defendants allegedly incited other inmates to assault
13 Plaintiff.  The likelihood of this harm occurring appears low, as Plaintiff pleads in his complaint
14 that this occurred while the institution was on lockdown.  Accordingly, the Court finds that
15 summary judgment should be granted in favor of Defendants Lopez and Brubaker as to
16 Plaintiff's Eighth Amendment claim against them.

17       **B.**    **Defendant Spaeth**

18       The Eighth Amendment prohibits cruel and unusual punishment.  "The Constitution does
19 not mandate comfortable prisons." *Farmer*, 511 U.S. at 832 (quotation and citation omitted).  A
20 prisoner's claim of inadequate medical care does not rise to the level of an Eighth Amendment
21 violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure
22 of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing
23 so.'"  *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Hallett v. Morgan*, 296
24 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).  The deliberate indifference standard involves
25 an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms,
26 "sufficiently serious . . . ."  *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298
27 (1991)).  Second, the prison official must "know[] of and disregard[] an excessive risk to inmate
28 health or safety . . . ."  *Id.* at 837.

7

1  "Deliberate indifference is a high legal standard." *Toguchi*, 391 F.3d at 1060.  "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'"  *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837).  "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'"  *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Defendant Spaeth contends that she did not disregard any of Plaintiff's medical needs. Defs. Mot. Summ. J. 9:15-10:11.  Defendant Spaeth examined Plaintiff on the last day of his hunger strike.  Defendant Spaeth ordered immediate tests when she learned that Plaintiff had been on a hunger strike for ten days.  Defendant Spaeth also referred Plaintiff for a mental health evaluation.  Even construing the facts in the light most favorable to the nonmoving party, the Court finds that there is no dispute of material fact.  At best, Plaintiff has a difference of opinion with Defendant Spaeth's medical treatment, which is not sufficient to for a cognizable deliberate indifference claim.  *See Toguchi*, 391 F.3d at 1058.  Accordingly, the Court finds that summary judgment should be granted in favor of Defendant Spaeth.

**C.    Defendants Bautista and Grannis**

The term "supervisory liability," loosely and commonly used by both courts and litigants alike, is a misnomer.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."  *Id.* at 1948.  Rather, each government official, regardless of his or her title, is only liable for his or her own misconduct.

When the named defendant holds a supervisory position, the causal link between the defendant and the claimed constitutional violation must be specifically alleged.  *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978).  For a cognizable claim for relief under § 1983 for supervisory liability, Plaintiff must demonstrate some facts indicating that the defendant either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or

8

promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Defendants Bautista and Grannis contend that there is no supervisory liability. Defendant Bautista responded to Plaintiff during the inmate grievance process by advising Plaintiff to file a staff complaint. That was the extent of Defendant Bautista's involvement with the alleged events. L. Hoagland responded on behalf of Defendant Grannis by returning documents to Plaintiff. That was the extent of Defendant Grannis's involvement with the alleged events.

Even construing the facts in the light most favorable to the non-moving party, the Court finds that there is no dispute of material fact. There are no facts that indicate any supervisory liability by Defendants Bautista and Grannis in this action. Accordingly, the Court finds that summary judgment should be granted in favor of Defendants Bautista and Grannis.

### D.      Qualified Immunity

Defendants contend that they are entitled to qualified immunity. Because all Defendants are entitled to summary judgment, the Court declines to address Defendants' arguments regarding qualified immunity.

## V.      Conclusion and Recommendation

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment, filed May 7, 2010, should be GRANTED in full;
2. Judgment should be entered in favor of all Defendants and against Plaintiff; and
3. The Clerk of Court be directed to close this action.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file

9

1 objections within the specified time may waive the right to appeal the District Court's order.
2 *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

   IT IS SO ORDERED.

   Dated: **December 20, 2010**       /s/ **Dennis L. Beck**
   UNITED STATES MAGISTRATE JUDGE